IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTONIO SUMMERS, | ) |
| *Plaintiff*, | ) |
| | ) No. 19 C 2978 |
| v. | ) |
| | ) Judge Virginia M. Kendall |
| MELLODY STANDIFORD, | ) |
| *Defendant*. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Antonio Summers ("Summers") brings this suit alleging that Defendant Mellody Standiford ("Standiford") alleging a denial of medical care that violated his Fourteenth Amendment rights under 42 U.S.C. Section 1983. Before the Court is Standiford's Motion for Summary Judgment. (Dkt. 83). For the reasons stated below, Standiford's Motion is granted.

**BACKGROUND**

Summers was a pretrial detainee at the Lake County Jail from February 2018 until August 2018. Defendant Mellody Standiford was employed at Armor Correctional Health Services and worked at the Lake County Jail as a Licensed Practical Nurse (LPN) from June 2015 until December 2020.

On June 29, 2018, Summers was involved in a fight with another inmate and was subsequently taken to the Jail medical unit for an examination. The medical personnel observed a "pea sized abrasion" and Plaintiff complained of pain in his left hand. (Dkt. 84, ("SOF") ¶13). Summers was then taken to Vista East Medical Center ER, where the treating physician at Vista East diagnosed Summers with a fractured left fourth finger. That diagnosis was reflected in the

1

Vista East discharge paperwork. (SOF Ex. 3). The same day, Summers returned from Vista East with a splint on that fractured finger, taped to his fifth finger, to keep his finger straight until he was able to see a doctor within a day or two. (SOF ¶16; Dkt. 89-9 ("ASOF") ¶9; see also SOF Ex. 3). In providing treatment to inmates, outside physician orders are not controlling on Lake County Jail or its medical personnel. (SOF ¶31). They are recommendations, but medical personnel are permitted to modify or change the treatment plan to comply with jail policies. (SOF ¶¶32-33). The splint contained a metal piece inside. (SOF ¶17; Ex 1, 30:3-7).

On July 5, 2018, Standiford went to Summers' cell and removed the ace wrap and finger splint from his left hand. A medical note entered by Nurse Standiford into Summers' file on July 5 in the afternoon states "Ace wrap and finger splint removed from left hand, minor abrasions healing and scabbed over, 3rd and 4th finger buddy taped together." (Dkt. 84-3 at 89; ASOF ¶23). Standiford testified that buddy taping would provide some immobilization, but not as much as a splint. (Dkt. 89-2, 60:9-12). Summers testified at his deposition that no tape was applied to his fingers when the splint was removed. (Dkt. 89-1 at 35:5-9). A medical note authored by a different nurse on July 5th after Nurse Standiford's note states, "Both [Plaintiff's] fingers buddy taped together" and "Patient without signs of distress and or pain at this time." (Dkt. 84-3 at 27). A note from Standiford on July 6 in the early afternoon states "3rd and 4th left fingers warm to touch, cap refill brisk, no c/o numbness or tingling, fingers buddy taped." (*Id.* at 421). The same day, a different member of the medical staff entered a note that she "removed tape from 3rd and 4th left fingers. assessed fingers then buddy taped them back together." (*Id.* at 89; ASOF ¶33). On July 9, 2018, Standiford entered another medical note: "Inmate asked this writer to tape his fingers. At this time inmate does not have third and fourth fingers on left hand taped. Buddy taped third and fourth fingers on left hand." (ASOF ¶34). On July 23, 2018, Standiford entered the following

2

medical note: "Alert, verbally responsive, able to ambulate, left hand without splint or tape, no c/o pain at this time." (ASOF ¶36).

Inmates in Lake County Jail, like Summers was at the time, are not allowed to have metal in their cells. (Dkt. 84-2, 66:3-5; *Id.*, 46:19-23). There are jail policies that prohibit it. (Dkt. 84-4, 43-44; Dkt. 84-1, 71:15-18). This is due to safety concerns, such as inmates creating shanks out of the metal objects. (*Id.* 66:11-16). Standiford did not recall at the time of her deposition removing Summers' splint, but testified that she would have removed the finger splint if "it was a metal splint" and that the "only way" it would have been removed if "it was a piece of metal. That's the only reason." (*Id.* 49:10-13; 60:24-61-4). Summers himself testified that Standiford told him that was why she was removing the splint:

> And that's when she said, "I'm going to need that on your finger." And I lifted my hand up and asked her, "What do you mean, the splint on my hand?" She said, "Yes. I need that because it's metal inside of it." I said, "Well, I was told that I gotta keep it on my hand until I see a doctor because it is broken." She said, "Well, I was ordered to come down here and retrieve it from you because there is metal inside of it."

(Dkt. 84-1, 33:12-16).

Summers testified that his outside surgeon told him he needed to get surgery as soon as possible because his hand was healing incorrectly. (ASOF ¶13). Summers ultimately received surgery on his finger on July 26, 2018. (Dkt. 84-3 at 422). After his surgery, Summers was taken to segregation and then the medical unit where he stayed for a month and a half. (ASOF ¶14).

Summers filed his initial complaint in this case on May 2, 2019 (Dkt. 1) and ultimately filed a Third Amended Complaint on August 20, 2021. (Dkt. 75). Standiford is the only remaining defendant in the case.

3

## **LEGAL STANDARD**

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the Court's primary function is not to "evaluate the weight of the evidence or to determine the truth of the matter," but to determine whether there is a general issue for trial. *See, e.g., U.S. Commodity Futures Trading Comm'n v. New World Holdings, LLC*, No. 10 C 4557, 2012 WL 983790, at *2 (N.D. Ill. Mar. 21, 2012) (quoting *Doe v. R.R Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994)). "A factual dispute is 'genuine' only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (internal quotation marks and citation omitted). The party moving for summary judgment bears the initial burden of production to show that no genuine issue of material fact exists. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)). Upon such a showing, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). These facts must demonstrate that the genuine issue is material and not simply a factual disagreement between the parties. *Id.* (quoting *Logan*, 96 F.3d at 978). The "nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.' " *Id.*

**DISCUSSION**

I. **Local Rule 56.1 Statements**

As a preliminary matter, Standiford argues that Summers' response to her Rule 56.1 statement does not comport with the local rules. The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015). Under Local Rule 56.1(b)(3), the nonmoving party must submit a "concise response" to each statement of fact, "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(B); *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). Courts may disregard responses that do not provide references to the record, or that contain only argument and/or conjecture. *See, e.g., Boyce v. Carter*, 2014 WL 4436384 at *3 (N.D. Ill. Sept. 8, 2014) citing *Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006). The Court will not strike Summers' unsupported, nonresponsive, or incomplete responses; however, the Court has only considered factual matters supported by the record and disregarded all improper or unresponsive argument in the parties' statements of fact.

II. **Analysis**

Claims of inadequate medical care by pretrial detainees like Summers are governed by the Fourteenth Amendment. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352-54 (7th Cir. 2018); *Collins v. Al-Shami*, 851 F.3d 727, 731 (7th Cir. 2017). For a pretrial detainee to prevail on a claim of deficient medical treatment, he must demonstrate two things:

> First, he must show that the defendants acted purposefully, knowingly, or recklessly. A showing of only negligence or even gross negligence will not suffice to meet this standard. Second, he must proffer evidence showing that the course of treatment he received was objectively unreasonable. This standard requires courts to focus on the totality of facts and circumstances faced by

5

> the individual alleged to have provided medical care and to gauge objectively - without regard to any subjective belief held by the individual - whether the response was reasonable.

*Turner v. Paul*, 953 F.3d 1011, 1015 (7th Cir. 2020) (internal citations and quotations omitted); *see also Williams v. Ortiz*, 937 F.3d 936, 942–43 (7th Cir. 2019) ("This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively . . . whether the response was reasonable. Said more succinctly, [a plaintiff] must demonstrate that genuine issues of material fact exist on two questions: (1) whether he suffered from an objectively serious medical condition and (2) whether the medical staff's response to it was objectively unreasonable.") (internal quotations omitted).

### A. Objectively Serious Medical Condition

While Summers generally alleges in the TAC that he was denied medical care between June 30 and July 22, 2018 (*Id.* ¶¶23-24), his allegations as to Standiford center on the removal of a splint from his fingers on July 5, 2018. Therefore, in the first half of the inquiry is whether Summers had a serious medical need on July 5, 2018, the day Summers alleges Standiford removed his splint in an objectively unreasonable manner. *Williams*, 937 F.3d at 942–4; s*ee also Gonzalez v. McHenry Cnty., Illinois*, 40 F.4th 824, 827–28 (7th Cir. 2022) ("To state a claim for inadequate medical care as a pretrial detainee, a complaint must allege that: (1) there was an objectively serious medical need…")

A serious medical need must be "an objective, life-threatening situation, or a risk of needless pain or lingering disability that went untreated, which would have been so obvious that even a lay person would perceive the need for a doctor's attention" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005); *David v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991). The condition "need not be life-threatening to be serious; rather, it could be a condition that would result in further

6

significant injury or unnecessary and wanton infliction of pain if not treated." *Palmer v. Franz*, 928 F.3d 560, 564 (7th Cir. 2019).

On June 29, 2018, Summers was treated at Vista Medical Center-East for a dislocated and fractured finger. Standiford does not dispute that on that day, Summers had an objectively serious medical condition (Dkt. 90 at 6) but contends that at the time she treated him a week later and removed his splint, he was no longer suffering from an objectively serious medical condition. Medical records reflect that Summers was provided pain medication and assessed (by staff other than Standiford) upon his return to the Jail from Vista Medical Center. (Ex. 3 at 25 and 256). He was treated regularly and had his pain managed by various medical staff until receiving surgery on July 26, 2018. "[N]ot every ache and pain or medically recognized condition involving some discomfort . . ." amounts to an objectively serious medical condition, *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997). However, the physician's recommendation (while not binding on jail medical staff) did recommend continued wear of the splint. "An objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (internal citation and quotation marks omitted). There is enough evidence in dispute to send to the jury on whether or not Summers' finger injury was objectively serious at the time Standiford treated him.

### B. Objective Unreasonableness

Even if a reasonable jury determined Summers' finger injury constituted an "objectively serious medical need," Standiford still cannot be liable absent evidence that she acted with objective unreasonableness. "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to

7

gauge objectively – without regard to any subjective belief held by the individual – whether the response was reasonable." *McCann v. Ogle Cnty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018). "A showing of negligence or even gross negligence will not suffice." *Id.*; *see also James v. Hale*, 959 F.3d 307, 318 (7th Cir. 2020) ("[M]ore than negligence or even gross negligence is required for a viable § 1983 claim for inadequate medical care."); *see also, e.g., McClendon v. Lochard*, No. 19-CV-373, 2021 WL 3172982, at *8, n.3 (N.D. Ill. July 27, 2021) (observing that pretrial detainees—like posttrial prisoners bringing suit under the Eighth Amendment—are not entitled to "demand specific care" or "receive the best care possible") (internal quotation marks and citations omitted)).

There is no genuine dispute of fact of the following: On June 29, 2018, Summers fractured his finger and a splint was placed on his finger that contained metal. Lake County Jail, where Summers was detained pretrial, does not allow inmates to have metal in their jail due to the safety concerns associated with having metal. On July 5, 2018, Standiford went to Summers' cell and removed the splint. Summers testified that she told him that was why she was removing the splint, and Standiford testified that was the only reason she would have removed it. This course of conduct cannot support a finding of objective unreasonableness. Standiford was acting consistent with jail policies, conduct that does not rise to a level beyond negligence or gross negligence. There is no contrary evidence that Standiford was removing the splint for any other reason, and no evidence that she did so to cause Summers harm or disregard a serious risk of harm. The medical records show that Standiford and other nurses continued to monitor his fingers that same day and in the days afterward (*see generally* Dkt. 89-3) further confirms the reasonableness of the care administered.

8

Everyone agrees that Standiford removed a metal splint from Summers' finger on July 5, but the parties dispute whether his fingers were buddy taped at that time.[1] At the summary judgment stage, the rule that facts must be viewed in the light most favorable to the non-moving party only applies if there is a "genuine" dispute as to those facts. *Scott v. Harris,* 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)). A party opposing summary judgment may rely on his own deposition testimony as well as affidavits based on his personal knowledge. *See Hill v. Tangherlini,* 724 F.3d 965, 967 (7th Cir. 2013). At summary judgment, it is not the Court's role to step into the shoes of the jury and make a determination about which party is more credible. But "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. at 380–81.

Except for his allegation that his fingers were not buddy taped on July 5, Summers makes no challenges as to the accuracy and veracity of his medical records, and in fact references several of those entries in his *own* statement of facts as undisputed. (ASOF ¶¶20-21, 23, 33-36, 39). The medical records—authored both by Standiford and other medical personnel not parties to this action—reflect that Summers' fingers were first buddy taped upon removal of the splint on July 5. (Dkt. 84-3 at 26, 89). Summers' "characterization of the facts, however, is inconsistent with the record evidence" and is blatantly contradicted by the medical records. *Holm v. Vill. of Coal City*, 345 F. App'x 187, 190 (7th Cir. 2009).

---

[1] While the "buddy taping" tends to support the objective reasonableness of Standiford's actions, assessing "objective unreasonableness" requires consideration of the "totality of the facts and circumstances." *McCann,* 909 F.3d at 886.. Even if a jury were to disregard the documentary evidence that his fingers were buddy-taped at the time the splint was removed and instead credit Summers' testimony that his fingers were not buddy taped on that day, the totality of the circumstances—that the metal needed to be confiscated per jail policy, that Summers was seen repeatedly for his finger in the hours and days after the splint was removed, and that he often reported no or little pain in the medical record—reflects the reasonableness of Standiford's care.

Finally, Summers argues that an issue of fact as to objective unreasonableness remains based on a course of care recommended by outside physicians. Right after his finger was fractured, Summers returned to the jail with a recommendation from Vista Medical that his splint remain on for two weeks. Summers contends this proves that removing the splint before the two weeks was objectively unreasonable. But Summers does not dispute that the course of treatment prescribed by Vista Medical was not binding on jail personnel, and that jail personnel have latitude in applying outside recommendations in light of the unique challenges and policies only present in a correctional setting. "There is not one 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter,* 541 F.3d 688, 697 (7th Cir.2008); *see also, e.g.*, *Burton*, 805 F.3d at 785–86 (noting in Eighth Amendment context that the fact that a different doctor prescribed plaintiff's preferred treatment is merely evidence "that another doctor would have followed a different course of treatment," which, on its own, is "insufficient to sustain a deliberate indifference claim"). This is especially true here, where the recommended course of treatment violated jail policy.

Summers makes too much of Standiford's failure to recall the specifics surrounding removal of his splint years later. (*See* Dkt. 89 at 7-9). He argues that her failure to recall removing the splint, or what the splint was made of, is fatal to her summary judgment motion. Summers is "entitled to all reasonable inferences in [his] favor, but 'inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion.'" *Design Basics, LLC, v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017) (quoting *Tu-bergen v. St. Vincent Hospital & Health Care Center, Inc.*, 517 F.3d 470, 473 (7th Cir. 2008). It does not strain belief or raise suspicion that a nurse employed in a prison would not recall a specific instance from years before. Lack of memory cannot manufacture a dispute of fact here. Her lack of recall is particularly

irrelevant in this case because Summers himself testified that Standiford told him she was removing the splint because it contained metal. (Dkt. 84-1, 33:12-16).

Finally, to recover on his claim, Summers needed to have presented "verifying medical evidence" that Standiford's alleged delay in care caused him some degree of harm. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 347 (7th Cir. 2018); *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007) ("[A] plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental.") Summers has not presented evidence that Standiford, as a nurse, had any control over when he was sent to surgery or that any decisions she made (other than to remove his splint) caused a detrimental delay in treatment, and certainly has offered no verifying medical evidence that any other action by Standiford caused a delay in treatment. Therefore, the Court focuses again on July 5, the day Standiford removed the splint. Summers flips this requirement to prove causation on its head: he argues that Standiford "fails to present any evidence . . . that her medical decision making was correct and that she did not cause him harm." (Dkt. 89 at 10). But even as the non-movant to this summary judgment motion, Summers must still offer verifying medical evidence of harm to raise a genuine issue of fact as to causation. *Williams*, 491 F.3d at 715.

When presenting verifying evidence, medical records alone can suffice and expert testimony is not required. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008); *Williams*, 491 F.3d at 715. Summers relies on surgery he received on July 26, 2018, as evidence that Standiford's removal of his splint was detrimental. However, the medical records reflecting that Summers eventually had surgery on his fractured finger do not reflect any evidence that splint removal exacerbated his condition. [E]vidence of a plaintiff's diagnosis and treatment, standing alone, is insufficient if it does not assist the jury in determining whether a delay exacerbated the

plaintiff's condition or otherwise harmed him." *Williams*, 491 F.3d at 715. Even viewing medical record evidence of surgery in a light most favorable to Summers, it is not enough to survive summary judgment. The other evidence Summers raises is an alleged conversation between himself and his surgeon that the delay in care was detrimental. This is not "verifying medical evidence" but merely Summers' testimony as to a conversation that is not in any medical record. Summers could have sought an affidavit from his surgeon or engaged an expert to present testimony on what, if any, detriment the splint removal caused. Summary judgment is the "put up or shut up" moment in a lawsuit. *Siegel v. Shell Oil Co.,* 612 F.3d 932, 937 (7th Cir.2010). Absent verifying medical evidence, Summers cannot recover.

In sum, the correct standard for a pretrial detainee's allegations of inadequate medical care under the Fourteenth Amendment is not, as Summers said, that Standiford "did not cause him harm" or did not exercise correct "medical decision making," (Dkt. 89 at 10). The standard for pretrial detainees is whether the medial professional's treatment was "objectively unreasonable" and rose to a level beyond negligence or even gross negligence. *Miranda*, 900 F.3d at 352-54: *see also Williams v. Patton*, 761 F. App'x 593, 597 (7th Cir. 2019) (observing in a Fourteenth Amendment context that a plaintiff must show that medical treatment was such "a significant departure from professional norms" that it was objectively unreasonable). Here, it is undisputed that the splint contained metal, and that pretrial detainees were not permitted to have metal in their cells. Standiford's testimony that she would not have removed it for any other reason is uncontroverted and consistent with Summers' testimony regarding the reason the splint was removed. Looking at the totality of facts and the circumstances, no reasonable jury would find Standiford's decision to remove the splint under those circumstances so beyond gross negligence as to constitute objective unreasonableness. *McCann*, 909 F.3d at 886. Summers fails to

demonstrate a genuine issue of material fact regarding whether Standiford's medical treatment was objectively unreasonable,[2] and therefore his claim cannot survive summary judgment.[3]

## CONCLUSION

For the reasons given, Defendant Mellody Standiford's Motion for Summary Judgment (Dkt. 83) is granted.

_____
Virginia M. Kendall
United States District Judge

Date: August 30, 2022

---

[2] Standiford also argues briefly and for the first time in reply that the claim against her should be dismissed because Summers failed to exhaust administrative remedies. (Dkt. 90 at 11-12). Because the Court finds that there is no genuine issue of material fact as to the objective unreasonableness of Standiford's alleged conduct, it does not reach this argument.

[3] Plaintiff's claims are dismissed, so the Court need not independently consider whether Summers' claim for punitive damages also fails. That said, claims for punitive damages are only permitted when the alleged conduct is shown to be motivated by "evil motive or intent, or when it involves reckless or callous indifference." *Alexander v. City of Milwaukee*, 474 F.3d 437, 453 (7th Cir. 2007). The evidence shows that the medical treatment Standiford administered was motivated by policy, not an evil motive or intent. Summers' claim for punitive damages fails for that independent reason.